**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**APPROXIMATELY 3,972,017 PAXOS STANDARD TOKENS SEIZED FROM PAXOS TRUST COMPANY**<br><br>**Defendant.** | **Civil Action No. 23-cv-339** |

**MEMORANDUM OF LAW IN SUPPORT OF UNITED STATES' MOTION FOR ENTRY OF PARTIAL DEFAULT JUDGMENT FORFEITING THE POTENTIAL INTERESTS OF ALL PERSONS AND ENTITIES IN THE WORLD AS TO THE DEFENDANT FUNDS OTHER THAN THE INTERESTS OF CLAIMANT WINTERMUTE TRADING LIMITED**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby moves for entry of a partial order for default judgment forfeiting the potential interests of all persons and entities in the world as to the defendant funds other than the interests of Claimant Wintermute Trading Limited ("Wintermute"), in accordance with Rule 55 of the Federal Rules of Civil Procedure. In support of this motion, the Government respectfully states as follows:

## FACTUAL SUMMARY

### I. Background related to virtual currency

1. **Virtual Currency**: Virtual currencies are digital tokens of value circulated over the Internet as substitutes for traditional fiat currency. Virtual currencies are not issued by any government or bank like traditional fiat currencies, such as the U.S. dollar, but rather are generated and controlled through computer software. Bitcoin (or BTC) and Ether (ETH) are currently the most well-known virtual currencies in use.

2. **Stablecoins:** Stablecoins are a type of virtual currency pegged to a commodity's price, such as gold, or to a fiat currency, such as the U.S. dollar. Stablecoins achieve their price stability via collateralization (backing) or through algorithmic mechanisms of buying and selling the reference asset or its derivatives. PAX is a stablecoin that is centrally managed by Paxos, in that Paxos is the token manager (*i.e.*, the owner of the smart contract) and also the treasury for PAX (*i.e.*, the entity responsible for keeping funds in reserve that back PAX).

3. **Virtual Currency Address**: Virtual currency addresses are the particular virtual locations to or from which such currencies are sent and received. A virtual currency address is analogous to a bank account number and is represented as a string of letters and numbers.

4. **Private Key**: Each virtual currency address is controlled through the use of a unique corresponding private key, a cryptographic equivalent of a password, which is needed to access the address. Only the holder(s) of an address's private key can authorize a transfer of virtual currency from that address to another address.

5. **Virtual Currency Wallet**: There are various types of virtual currency wallets, including software wallets, hardware wallets, paper wallets. The virtual currency wallets at issue for the purposes of this affidavit are software wallets (*i.e.,* a software application that interfaces with the virtual currency's specific blockchain and generates and stores a user's addresses and private keys). A virtual currency wallet allows users to store, send, and receive virtual currencies. A virtual currency wallet can hold many virtual currency addresses at the same time.

6. Wallets that are hosted by third parties are referred to as "hosted wallets" because the third party retains a customer's funds until the customer is ready to transact with those funds. Conversely, wallets that allow users to exercise total, independent control over their funds are often called "unhosted" wallets.

7. **Blockchain**: The code behind many virtual currencies requires that all transactions involving that virtual currency be publicly recorded on what is known as a blockchain. The blockchain is essentially a distributed public ledger, run by a decentralized network of computers and using that blockchain's technology, containing an immutable and historical record of every transaction. The blockchain can be updated multiple times per hour and records every virtual currency address that has ever received that virtual currency and maintains records of every transaction and all the known balances for each virtual currency address. There are different blockchains for different types of virtual currencies.

8. **Blockchain Explorer**: These explorers are online tools that operate as a blockchain search engine. Blockchain explorers enable users to search for and review transactional data for any addresses on a particular blockchain. A blockchain explorer is software that uses API and blockchain nodes to draw data from a blockchain and uses a database to arrange and present the data to a user in a searchable format.

9. **Decentralized Finance (DeFi)**: Decentralized Finance, or DeFi, is an umbrella term for financial services on public blockchains, primarily the Ethereum network. The Ethereum network's native virtual currency is ETH. Ethereum was the first blockchain to offer various decentralized services within its network. To make these services possible, the Ethereum network allows other tokens besides ETH to run on the network. These tokens (*i.e.*, non-ETH tokens) are known as ERC-20 tokens.

10. DeFi is a term used to describe a financial system that operates without the need for traditional, centralized intermediaries. Instead, DeFi platforms offer an alternative financial system that is open for anyone to use and that allows centralized intermediaries to be replaced by decentralized applications (or dApps). With DeFi, a person can obtain many of the financial services that banks typically support—such as earn interest, borrow, lend, buy insurance, trade derivatives, and trade assets—but accessing DeFi can be a faster process than opening a bank account and does not require paperwork or a third party. DeFi is global, peer-to-peer (*i.e.*, interactions take place directly between two users rather than being routed through a centralized system), pseudonymous, and open to the public.

11. **Virtual Currency Exchanges (VCEs)**: VCEs are trading and/or storage platforms for virtual currencies, such as BTC, ETH, and PAX. Many VCEs also store their customers' virtual currency in virtual currency wallets. As previously stated, these wallets can hold multiple virtual currency addresses. Because VCEs act as money services businesses, they are legally required to conduct due diligence of their customers (*i.e.*, "know your customer" or "KYC" checks) and to have anti-money laundering programs in place.

12. **Blockchain Analysis:** It is virtually impossible to look at a single transaction on a blockchain and immediately ascertain the identity of the individual behind the transaction. That is

because blockchain data generally consist only of alphanumeric strings and timestamps. But law enforcement can obtain leads regarding the identity of the owner of an address by analyzing blockchain data to figure out whether that same individual is connected to other relevant addresses on the blockchain. To analyze blockchain data, law enforcement can use blockchain explorers as well as commercial services offered by several different blockchain-analysis companies. These companies analyze virtual currency blockchains and attempt to identify the individuals or groups involved in transactions. "For example, when an organization creates multiple [BTC] addresses, it will often combine its [BTC] addresses into a separate, central [BTC] address (*i.e.*, a "cluster"). It is possible to identify a 'cluster' of [BTC] addresses held by one organization by analyzing the [BTC] blockchain's transaction history. Open source tools and private software products can be used to analyze a transaction." *United States v. Gratkowski*, 964 F.3d 307, 309 (5th Cir. 2020). Through numerous unrelated investigations, law enforcement has found the information provided by these tools to be reliable.

## II. Overview regarding the hack and the theft of funds from Wintermute

13. As described more fully in the Verified Complaint, on or about September 20, 2022, a hacker or hackers initiated an online exploit that allowed them to gain unauthorized access to the virtual currency wallet belonging to virtual asset service provider, Claimant Wintermute. The hacker(s) did so by exploiting a vulnerability in an automatic address-generating tool that Wintermute used. That exploit enabled the hacker(s) to recover private keys from public addresses generated by that particular tool and, in turn, to steal more than $160 million in digital assets from a wallet belonging to Wintermute.

14. In particular, the hacker(s) targeted a Wintermute wallet that Wintermute used for Decentralized Finance ("DeFi") proprietary trading operations. The hacker(s) managed to steal

approximately $160 million worth of digital assets from this wallet, consisting of approximately $120 million worth of the stablecoins USD Coin ("USDC") and U.S. Dollar Tether ("USDT"), $20 million worth of bitcoin ("BTC") and ether ("ETH"), and $20 million of lesser-known coins, including approximately 3,972,017 Paxos Standard tokens ("PAX") (the "Defendant Funds"). The hacker(s), using the above-described exploit, transferred the Defendant Funds from Wintermute's wallet to an unhosted virtual currency address. The Government does not currently know who owns or controls that unhosted address.

15. On or about September 23, 2022, Paxos, the token manager of the PAX token, froze the Defendant Funds in this unhosted virtual currency address pursuant to a request made by law enforcement.

16. On or about October 25, 2022, the Government obtained a seizure warrant (under case number 22-sz-25) to seize the Defendant Funds by transferring them to a government-controlled wallet. On or about November 17, 2022, the FBI executed this seizure warrant by causing the Defendant Funds, approximately 3,972,017 PAX tokens, to be transferred to the government-controlled wallet where the Defendant Funds currently remain.

## JURISDICTION

17. This Court has jurisdiction over "any action or proceeding for the recovery or enforcement of any … forfeiture … incurred under any Act of Congress." 28 U.S.C. §1355(a). Venue is proper in the District of Columbia because it is the "judicial district … into which [the Defendant Funds] [were] brought" after seizure. 28 U.S.C. §1355(b)(1)(B) and 28 U.S.C. §1395(c).

## PROCEDURAL HISTORY

18. The Government commenced this civil forfeiture action on February 7, 2023, by filing a Verified Complaint for Forfeiture *In Rem* against approximately 3,972,017 PAX tokens, (the Defendant Funds). See ECF 1. As alleged in the Verified Complaint, the Defendant Funds, as proceeds from the unauthorized hack and theft of cryptocurrency from Wintermute, are subject to forfeiture under Title 18, United States Code, Section 981(a)(1)(C) (permitting civil forfeiture of proceeds of or traceable to the commission of various offenses), including cross references to Title 18, United States Code, Sections 1956(c)(7) and 1961(1) (together, permitting forfeiture of proceeds traceable to violations of Title 18, United States Code, Sections 1343 (wire fraud) and 1029 (access device fraud)). The complaint was verified by FBI Supervisory Special Agent Christopher Wong.

19. On February 8, 2023, the Clerk of the Court issued a warrant to arrest the property in accordance with Supplemental Rule G(3) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supp. R. G"). See Warrant ECF 2; Supp. R. G(3)(b)(i).

20. On March 2, 2023, in accordance with Supplemental Rule G(4)(b), the Government provided direct notice of this asset forfeiture action to Wintermute. See ECF 10

21. On March 3, 2023, in accordance with Supplemental Rule G(4)(a)(iv)(C), the Government initiated notice of this civil forfeiture action by publication on an official internet government forfeiture site, www.forfeiture.gov, for 30 consecutive days, through on or about April 1, 2023. See Declaration of Publication ("Publication Decl."), Att. 1 (Notice of Forfeiture Action) at 1. Proof of such publication was filed with the Clerk of the Court on May 3, 2023. See ECF 9.

22. On March 31, 2023, Wintermute filed a verified claim. See ECF 6.

23. Pursuant to Supp. R. G(5)(a)(ii)(B), any claimant receiving notice by publication had to file a verified claim "no later than 60 days after the first day of publication" on the official internet government forfeiture site. Here, that filing deadline for potential claimants who received notice by publication was May 2, 2023.

24. To date, no potential claimant other than Wintermute has filed a verified claim to the Defendant Funds or an answer in this action and no other parties have appeared to contest the action and the time to do so has expired. Accordingly, Wintermute is the only claimant known by the Government to have a potential interest in the Defendant Funds.

25. On July 11, 2023, the Clerk for the District of Columbia entered Default as to the potential interests of all persons or entities other than Wintermute in the instant matter. See ECF 11.

**ENTRY OF DEFAULT JUDGMENT IS APPROPRIATE**

26. This Motion seeks entry of an order imposing a partial default judgment forfeiting certain potential property interests in the Defendant Funds, namely, the potential interests of any and all persons and entities in the world as to the Defendant Funds other than the interests of Claimant Wintermute.

27. The entry of partial default judgment forfeiting the interests of all non-responsive potential claimants in the Defendant Funds is supported by the circumstances of this case and applicable law.

28. The entry of a default judgment requires the completion of a two-step process. First, the Government must request the Clerk of Court enter default against a party who has "failed to plead or otherwise defendant" the action. Fed. R. Civ. P. 55(a). The Clerk of the Court "must enter" default when there has been a failure to plead timely or otherwise defend an action within the time

fixed by law. Fed. R. Civ. P. Rule 55(a). Second, the Government must move for entry of default judgment, and "upon the party's request, allow for the court 'to enter or effectuate judgment,'" *United States v. $6,999,925.00 of Funds Associated with Velmur Mgmt. Pte. Ltd.*, 368 F. Supp. 3d 10, 17 (D.D.C. 2019) (quoting Fed. R. Civ. P. 55(b)).

29. To obtain default judgment, a plaintiff must show both (1) that it provided adequate notice and the unresponsive party failed to appear and (2) that the well pleaded allegations in the complaint state a claim for relief:

> Default judgment is typically available "only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights." *$6,999,925.00 of Funds* (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)). But a defendant's failure to respond or appear "do[es] not automatically entitle plaintiff to a default judgment." *Id.* (quoting *Jackson v. Corr. Corp. of Am.*, 564 F. Supp. 2d 22, 26 (D.D.C. 2008)). Rather, the complaint must state a claim for relief in order for the plaintiff to be entitled to default judgment. *Id.* Stated differently, "[d]efault establishes the defaulting party's liability for the well-pleaded allegations of the complaint," but not for allegations that are insufficiently pleaded. *Id.* (quoting *Boland v. Elite Terrazzo Flooring, Inc.*, 763 F. Supp. 2d 64, 67 (D.D.C. 2011)).

*United States v. $429,900.00 of Blocked Funds Associated With Ryer Int'l Trading, Ltd.*, No. CV 20-2546 (RC), 2021 WL 5050070, at *4 (D.D.C. Nov. 1, 2021).

30. To obtain default judgment in a civil forfeiture action, the Government "must meet both the legal standard for default judgment and for civil forfeiture under the Federal Rules of Civil Procedure." *Id.* at *5. Specifically, the Government must show that it has satisfied both the "notice requirements and substantive pleading requirements" set forth in Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which rule governs in rem civil forfeiture actions. *Id.*; *see also United States v. $1,207,035.31*, No. 1:16-cv-

00064-RBW, 2021 WL 2255173 (D.D.C. June 3, 2021) (granting government default judgment as to defendant seized funds where government demonstrated that it provided notice of the forfeiture action to potential claimant consistent with Rule G, potential claimant failed to make a timely claim under Rule G, and the complaint's factual allegations, deemed admitted, satisfied the pleading requirements set forth in Rule G and entitled the government to forfeiture under the applicable substantive forfeiture statutes, § 981(a)(1)(A) and (C), as funds traceable to IEEPA violations, conspiracy to violate IEEPA, and international money laundering).

31. In a civil forfeiture action, after the Government has published notice and the time for persons who received notice by publication has expired, a court may enter default judgment against all potential claimants who did not file a claim. *See, e.g., United States v. Approx. 3879.16242937 Bitcoin*, No. 3:21-cv-02103-AJB-JLB, 2022 WL 2128908 at *2-4 (S.D. Cal. Apr. 18, 2022) (granting government's motion for default judgment forfeiting interests in defendant funds of all potential claimants in the world, other than the interests of claimant victim company, where government demonstrated that it had published notice of the forfeiture action in accordance with Rule G(2) notice requirements, no potential claimants other than claimant victim had filed a timely claim, the well-pleaded allegations of complaint established forfeitability, and the Ninth Circuit's *Eitel* factors justified grant of default judgment); *United States v. $186,907.00 in U.S. Currency*, Civil No. 07–3229, 2008 WL 2331610, *4 (D. Minn. 2008) (entering default judgment "against all unknown persons and entities having an interest in" defendant truck and trailer after government showed that it gave proper notice of civil forfeiture action and no one filed a timely claim); *United States v. 3234 Washington Avenue North*, No. Civ. 03–5765JNEFLN, 2006 WL 487863, *1 (D. Minn. 2006) (entering default judgment against all persons having an interest in the property other than those who filed claims); *United States v. Commodity Account at Saul*

*Stone & Co.*, No. 96 C 8423, 1999 WL 91910, *3 (N.D. Ill. 1999) (once notice has been published and time for filing claims has expired, court may enter default judgment against all potential claimants who did not file claims), *aff'd*, 219 F.3d 595 (7th Cir. 2000).

**I. Clerk's Entry of Default**

32. As noted above, on July 11, 2023, the Clerk of Court entered Default in this matter. See ECF 11.

**II. Requirements for Entry of Default Judgment have been met**

33. The Government has met both the notice and substantive pleading requirements of Rule G of the Supplemental Rules for Admiralty or Maritime and Asset Forfeiture Claims.

**a. The Government Has Met the Applicable Notice Requirements of Supplemental Rule G**

34. The Supplemental Rules govern civil forfeiture actions *in rem* arising from a federal statute. See Fed. R. Civ. P. Supp. R. A(1)(B). The Federal Rules of Civil Procedure also apply except to the extent they are inconsistent with the Supplemental Rules. See Fed. R. Civ. P. Supp. R. A(2). Supplemental Rule G(4) governs the process by which the Government must serve notice of the complaint. The Government must provide notice to the public via publication, as well as to potential claimants via direct notice. *See* Fed. R. Civ. P. Supp. R. G(4)(a), (b).

*Notice by Publication*

35. Notice by publication must describe the property, state the time to file a claim and answer, and name the Government attorney to be served with the claim and answer. *Id.* Supp. R. G(4)(a)(ii). The notice is sufficient where it is published "on an official internet government forfeiture site for at least 30 consecutive days." *Id.* Supp. R. G(4)(iv)(C).

36. On March 3, 2023, the United States began publication by posting notice on www.forfeiture.gov, an official government internet forfeiture site. See Service, ECF 9. The

Notice described the property subject to forfeiture, stated the time to file a claim and answer, and identified the Government attorney to be served with the claim and answer. *Id.* The Notice was posted on this site for 30 consecutive days. The last date of publication was on April 1, 2023.

37. Accordingly, any verified claim in response to the notice by internet publication had to be filed no later than May 2, 2023. See Fed. R. Civ. P. Supp. R. G(5)(a)(ii).

38. As previously stated, no person or entity other than Wintermute filed a claim, and the time to do so has since expired. Accordingly, the Government has satisfied its obligation to provide notice by publication.

*Direct Notice*

39. Supplemental Rule G also requires that the United States send direct notice "to any person who reasonably appears to be a potential claimant on the facts known to the government." Fed. R. Civ. P. Supp. R. G(4)(b)(i). The notice must be sent by means "reasonably calculated to reach the potential claimant." Fed. R. Civ. P. Supp. R. G(4)(b)(i)(A). In other words, direct notice must be sent "to any person who reasonably appears to be a potential claimant" and "by means reasonably calculated to reach the potential claimant." *United States v. Three Hundred Three Virtual Currency Accounts*, No. 20-cv-712, 2021 WL 663190, at *3, (D.D.C. Feb. 19, 2021); Fed. R. Civ. P. Supp. R. G(4)(b)(i), (iii)(A).

40. The Government has identified only one potential claimant, Wintermute.

41. On or about March 2, 2023, the United States served notice on the only known potential claimant, Wintermute, via electronic mail. See ECF 10.

42. Under Rule G(5), a verified claim must be filed with the Clerk of the Court, with a copy to the Government attorney, within thirty-five (35) days after service of the Notice of Judicial Forfeiture Proceedings, or within such additional time as the court may allow. An answer must be

filed and served within twenty-one (21) days thereafter. Supp. R. G(5)(B); 18 U.S.C. § 983(a)(4)(B).

43. Supplemental Rule G(5) provides in part: "The claim must: (A) identify the specific property claimed; (B) identify the claimant and state the claimant's interest in the property; (C) be signed by the claimant under penalty of perjury; and (D) be served on the Government attorney designated under Rule G(4)(a)(ii)(C) or (b)(ii)(D)."

44. Accordingly, in response to the direct notice, Wintermute had to file a verified claim with this Court within 35 days of the service, that is, no later than April 6, 2023.

45. Wintermute filed a timely and valid claim on March 31, 2023. ECF 6.

46. In sum, the Government has satisfied its obligation to provide direct notice to potential claimants, in addition to providing notice to all unknown potential claimants in the world by publication.

**b. The Complaint States a Claim for Relief**

47. In addition to the inquiry as to whether the Government has provided sufficient notice to all claimants as to the Defendant Funds, the court must also find that the Government has met its substantive pleading requirements before it can enter a default judgment. Supplemental Rule G(2) sets forth the requirements for a civil forfeiture complaint. See Fed. R. Civ. P. Supp. R. G(2). Where the plaintiff is seeking forfeiture in rem under a federal statute, "the complaint must be verified, state the grounds for jurisdiction and venue, describe the property with reasonable particularity, identify the statute under which the forfeiture action is brought and state sufficiently detailed facts to support a reasonable belief that the Government will be able to meet its burden of proof at trial." *Three Hundred Three Virtual Currency Accounts*, 2021 WL 663190, at *4 (*quoting*

*United States v. $6,999,925.00 of Funds Associated with Velmur Mgmt. Pte. Ltd.*, 368 F. Supp. 3d 10, 19 (D.D.C. 2019)).

48. In reviewing the adequacy of the complaint, the court must find that the complaint sufficiently states facts to support a reasonable belief that the Government will be able to meet its evidentiary burden at trial. Supp. R. G(2)(F); *see also id.; United States v. All Assets Held in Account Number XXXXXXXX*, 83 F. Supp. 3d 360, 366 (D.D.C. 2015).

49. The Government's burden of proof in civil forfeiture cases is a preponderance of the evidence. Title 18, United States Code, § 983(c) states, in pertinent part:

> In a suit or action brought under any civil forfeiture statute for the civil forfeiture of any property –
>
> (1) the burden of proof is on the Government to establish, by a preponderance of the evidence, that the property is subject to forfeiture;
>
> (2) the Government may use evidence gathered after the filing of the complaint for forfeiture to establish, by a preponderance of the evidence, that the property is subject to forfeiture; and
>
> (3) if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense.

18 U.S.C. § 983(c).

50. Although the Government must prove a forfeiture claim by a preponderance of the evidence to succeed at trial, at the pleading stage, the Government need merely satisfy the Supplemental Rule G(2)(F) reasonable belief test—namely, that the Government has alleged sufficient facts in the complaint to support a reasonable belief that it will be able to meet its burden of proof at trial. *Three Hundred Three Virtual Currency Accounts*, 2021 WL 663190, at *2 (quoting *United States v. $1,071,251,44 of Funds Associated with Mingsheng Int'l Trading Ltd.*, No. 17-cv-01166, 2018 WL 3949962, at *8-9 (D.D.C. 2018)).

51. Here, the Government has alleged sufficient facts in the Complaint to satisfy the Rule G(2)(F) reasonable-belief test. Specifically, the Government has alleged facts that, accepted as true, establish that the Defendant Funds are subject to forfeiture because an unknown actor or those actors unlawfully obtained private keys to a trading wallet belonging to sole claimant Wintermute and stole funds belonging to Wintermute from that trading wallet.

52. The deadline for every other potential claimant in the world who received notice of this civil forfeiture action via publication to file their claim against the Defendant Funds was May 2, 2023. But no such claimant filed a claim. And that leaves victim Wintermute, which received direct notice, as the sole claimant in this action. See Supplemental Declaration in Support of Default, ECF 13.

53. Accordingly, no one who received notice by publication has asserted a timely and valid claim as to the Defendant Funds or has attempted to file an answer disputing the allegations in the Government's verified civil forfeiture Complaint. Although the sole claimant, Wintermute, has filed a claim to the Defendant property, it has not yet filed an Answer, by agreement with the Government and after an extension of the filing deadline by this Court. See ECF 8. So neither the sole claimant nor any other person or entity in the world has disputed the allegations that the Government has set forth in its verified complaint. The Government contends that the verified complaint alleges facts establishing a reasonable belief that the Government would be able to prove by a preponderance of the evidence that the Defendant property is subject to forfeiture to the Government in its entirety under Title 18, United States Code, § 981(a)(1)(C) as property that constitutes proceeds of, or that was derived from proceeds traceable to, violations of Title 18, United States Code, Sections 1343 (wire fraud) and 1029 (access device fraud)—subject to any potentially superior claim of Wintermute.

54. By moving for default judgment forfeiting the interests of all potential claimants in the world other than Claimant Wintermute, the Government seeks to terminate and default the interests of all unknown potential claimants in the world other than Wintermute as to the Defendant Funds. Denying the motion would unduly prejudice the Government because the Government would then be required to litigate this action as against unknown potential claimants other than Wintermute who have not appeared to contest this forfeiture despite having been given the opportunity to do so. *See United States v. Approximately $28,000 in U.S. Currency*, No. 09-5377 SC, 2010 WL 1340110, at *4 (N.D. Cal. Apr. 5, 2010) (pointing out prejudice where the government would have to expend further time and effort in an action that has no opposing party).

55. Additionally, the merits of the Government's substantive claim are strong. The well-pleaded facts in the Complaint support a reasonable belief that the Defendant Funds are subject to forfeiture as proceeds of wire fraud and access-device fraud offenses. The Verified Complaint alleges that unauthorized person(s) transferred the Defendant Funds from Wintermute's operating wallet by exploiting a vulnerability in the address generating tool that Wintermute had been using. The vulnerability enabled the hacker(s) to generate the private key needed to make an unauthorized transfer of, i.e., steal, the funds.

56. The facts and circumstances of this case thus justify the entry of default judgment against the Defendant Funds. The Government has complied with both the notice and substantive pleading requirements of Supplemental Rule G governing *in rem* civil forfeiture actions. The Verified Complaint alleges facts supporting a reasonable belief that the Defendant Funds are forfeitable under the substantive asset forfeiture statute, 18 U.S.C. § 981(a)(1)(C), as property constituting or derived from proceeds traceable to violations of wire fraud and access-device fraud.

57. For these reasons, the Government requests that the Court enter a Default Judgment condemning and forfeiting in favor of the United States the interests of any and all potential claimants in the world, as to the Defendant Funds—other than Claimant Wintermute.

## CONCLUSION

58. Upon consideration of the record in this case, including a showing of compliance with applicable rules regarding service of process and notice by publication, and the default having been entered by the Clerk of the Court, the United States respectfully requests that its Motion be granted. *See 8 Gilcrease Lane*, 638 F.3d at 299 (upholding district court's order for default judgment and final order of forfeiture, because there were no valid claims); *United States v. $9,928.00 in U.S. Currency*, 10-cv-1728, 2012 WL 1004873, at *1 (D.D.C. Mar. 27, 2012) (ordering default where government submitted affidavit certifying that it gave appropriate notice and that no claims were filed); *United States v. $4,620 in U.S. Currency*, 779 F. Supp. 2d 65, 67 (D.D.C. 2011) (ordering default where court struck sole claimant's claim, leaving no claimants to the defendant funds).

59. The United States respectfully requests in light of the foregoing that judgment be entered declaring that the Defendant Funds be forfeited to the United States of America for disposition according to law. A proposed Default Judgment directing that the Defendant Funds be forfeited is attached to the Motion.

**WHEREFORE**, the United States respectfully submits this Memorandum of Law in support of its Motion to Enter Default Judgment.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: */s/ Pravallika Palacharla*
Pravallika Palacharla, Illinois Bar No. 6313672
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Telephone: 202-252-7829 (Palacharla)
pravallika.palacharla@usdoj.gov

*/s/ Christopher Brown*
Christopher B. Brown, D.C. Bar Number 1008763
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Telephone: 202-252-7153
Christopher.Brown8@usdoj.gov