**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**APPROXIMATELY 3,972,017 PAXOS STANDARD TOKENS SEIZED FROM PAXOS TRUST COMPANY**<br><br>**Defendant.** | **Civil Action No. 23-cv-339** |

## STIPULATION FOR COMPROMISE SETTLEMENT

The Plaintiff, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the sole Claimant, Wintermute Trading Limited, ("Wintermute"), by Marina Gurevich, its Chief Operating Officer, and its counsel, David Smith, (collectively, the "Parties") hereby stipulate and agree as follows:

1. On or about November 17, 2022, pursuant to the Court's Seizure Order of October 25, 2022, a duly authorized agent of the Federal Bureau of Investigation ("FBI") seized and arrested the Defendant Funds, described as:

> **Approximately 3,972,017 PAX tokens seized from Paxos Trust Company**.

2. On February 7, 2023, the United States filed a verified complaint in this civil forfeiture action in the United States District Court for the District of Columbia against the Defendant Funds (the "Complaint"). The Complaint alleges that the Defendant Funds:

   a. Were transferred by Paxos to law enforcement custody on November 17, 2022;

b. Constitute or were derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 (wire fraud) and 1029 (access device fraud); and

c. Are therefore subject to civil forfeiture under Title 18, United States Code, § 981(a)(1)(C).

3. The Parties stipulate as follows:

a. On or about September 20, 2022, an unknown individual or individuals ("hackers") initiated an online exploit that allowed them to gain unauthorized access to a Wintermute virtual currency wallet.

b. On or about September 20, 2022, after initiating that online exploit, the hackers stole over $160 million worth of digital assets from Wintermute's wallet.

c. Wintermute is a UK-based proprietary trading firm that specializes in algorithmic trading of digital assets.

d. Historically, Wintermute used Profanity, an Ethereum vanity address-generating tool to generate some of its legacy addresses. While most Ethereum wallet addresses are generated randomly (*i.e.*, a user is assigned a random alphanumeric string), Profanity enables its users to create vanity addresses containing a chosen name, word, or phrase somewhere within the address. Vanity addresses are created by calculating many different public/private keypairs and identifying one that meets the criteria set forth by the user. In other words, instead of getting a string of random letters and numbers as a user's virtual currency wallet address, Profanity allows users to choose their own address, containing a user-specified string of letters and numbers.

e. According to Wintermute, in early 2022, as part of ongoing improvements Wintermute stopped using Profanity to generate any new addresses. Later in August 2022, reports became known of a vulnerability in Profanity's automatic address-generating tool that could allow attackers to recover private keys from certain vanity addresses generated using Profanity.

f. According to Wintermute, in early September 2022, following internal investigations and thirdparty reports Wintermute took measures to review its wallets and to retire ones generated by Profanity and to blacklist such Profanity-generated wallets. However, Wintermute's blacklisting of one of several wallets failed.

g. On September 20, 2022, hackers conducted an elaborate multi-step exploit using compromised Profanity-generated wallets to gain unauthorized access to a Wintermute wallet and to transfer approximately $160 million worth of digital assets via access through a Profanity-generated wallet. Hackers accessed Wintermute's wallet, without Wintermute's authorization, by executing the above-described Profanity exploit to gain access to smart contract functionality to extract funds away. .

h. More specifically, on or about September 20, 2022, between approximately 5:03 a.m. and 5:47 a.m. UTC, the hackers conducted an elaborate multi-step exploit using compromised Profanity-generated wallets to gain unauthorized access to Wintermute's wallet. The hackers then initiated transactions to transfer approximately $160 million worth of funds, including the Defendant Funds, out of the Wintermute wallet. The hackers conducted this exploit and transferred those Wintermute funds, including the Defendant Funds, without

Wintermute's authorization and under the false and fraudulent pretense that the hackers were the legitimate owners of the Wintermute funds.

i. The hackers sent the Defendant Funds from Wintermute's wallet to an unhosted virtual currency address outside Wintermute's control. Law enforcement continues to work to identify the owner/controller of that virtual currency address.

j. In conducting these transactions, the unknown hackers caused to be transmitted by means of wire communication in interstate or foreign commerce writings, signs, and signals in the form of transaction announcements broadcast across the networks for each of the stolen cryptocurrencies, including BTC, ETH, and PAX.

k. Of the $160 million, hackers stole approximately: $120 million worth of the stablecoins USDC and Tether (or USDT), $20 million worth of BTC and ETH, and $20 million in other coins, including the Defendant Funds consisting of approximately 3,972,017 PAX tokens.

l. Paxos is a U.S.-based virtual currency exchange that acts as the token manager and treasury for PAX tokens. In this context, acting as the token manager and treasury for PAX means that Paxos controls (1) the smart contract that creates PAX tokens and (2) the reserve assets held to back each minted PAX token available on the market. Paxos's role as token manager and treasury enable Paxos to modify the smart contract for PAX to "freeze" PAX tokens contained in an unhosted wallet address, then "burn" (*i.e.*, render unusable) the PAX tokens in that crime-linked unhosted virtual currency address. Pursuant to a

warrant, Paxos can reissue the same amount of PAX tokens that have been burned (i.e., mint new PAX tokens) to an address in law enforcement's control.

m. On or about September 23, 2022, using this freeze/reissuing capability, Paxos worked to freeze (via wire communications across blockchains) the Defendant Funds in the unhosted virtual currency address, pending the receipt of a seizure warrant or other appropriate legal process.

n. On or about October 25, 2022, Magistrate Judge Moxila A. Upadhyaya signed a warrant under case number 22-sz-25, authorizing the seizure of the Defendant Funds.

o. On or November 17, 2022, Paxos transferred the Defendant Funds to law enforcement custody. That transfer was initiated by Paxos in New York.

4. On or about March 2, 2023, the United States caused the Complaint and the Notice of Judicial Forfeiture Proceedings to be served on Potential Clamant Wintermute, via electronic mail. ECF 10.

5. On or about March 31,2023, Wintermute filed a timely and valid Verified Claim to the Defendant Funds Seized for Forfeiture. ECF 6.

6. Beginning on March 3, 2023, and continuing through April 1, 2023, the United States posted notice of this civil forfeiture action on an official government internet website, on www.forfeiture.gov, for at least 30 consecutive days, as required by Rule 4(G)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See* Service, ECF 9.

7. As of May 2, 2023, the sole claimant in this action was Wintermute. By that date, the time for any other potential claimant to file a claim had expired and no other person or entity had filed a claim to the Defendant Funds.

8. Accordingly on July 6, 2023, the United States filed a Declaration of and Request for Clerk's Entry of Default as to All Potential Claimants Except Wintermute Trading Ltd.

9. On July 11, 2023, the Clerk entered default as to all potential claimants except Wintermute. ECF 10, 11.

10. On August 25, 2023, the United States filed its Notice of Motion and Motion for Judgment by Default as to All Potential Claimants Except Wintermute Trading Ltd. The United States brought that motion for the purpose of forfeiting to the United States the potential interests of all persons and entities in the world in the Defendant Funds, other than Claimant Wintermute's interest in the Defendant Funds, so that the United States could then enter into an agreement with Wintermute—(a) recognizing Claimant Wintermute's superior interest in the Defendant Funds; and (b) stipulating to entry of a Judgment declaring that all right, title, and interest in the Defendant Funds belongs to Claimant Wintermute—without fear that some other claimant might one day also assert a belated claim to the Defendant Funds.

11. On November 22, 2023, the Court entered a "default judgment forfeiting the interests of all potential claimants in the world, other than Claimant Wintermute Trading Limited, as to the Defendant Funds pursuant to Fed. R. Civ. P. 55." The Court further ordered that "[t]his Case shall remain pending, however, to resolve the respective interests of the United States and Wintermute in the Defendant Funds." ECF 17.

12. Now that the potential claims of everyone in the world as to the Defendant Funds, other than those of the Plaintiff United States and the sole claimant, Wintermute, have been

adjudicated and forfeited to the United States by default, the Plaintiff United States and Claimant Wintermute (collectively, the "Parties"), hereby agree to settle and compromise this civil forfeiture action on the terms set forth below.

13. The Parties stipulate to the accuracy of the procedural facts set forth in paragraphs 1-12 above.

14. The Parties further stipulate that paragraph 2 accurately summarizes the relief sought in the Complaint; that the legal conclusions set forth in paragraph 2 are correct; and that the factual stipulations set forth in paragraph 3 of this agreement are materially true and correct to the best of each Party's knowledge.

15. Consistent with the facts set forth in paragraphs 2 and 3, the Parties hereby stipulate and agree that Claimant Wintermute was and is the rightful owner of both: (1) the Defendant Funds, that is, the approximately 3,972,017 PAX tokens that hackers obtained by fraud; and (2) the address from which the hackers fraudulently transferred those funds.

16. Claimant Wintermute warrants and represents that it is the sole owner of the Defendant Funds and that address that no other person or entity has an interest in the Defendant Funds or that address.

17. The United States stipulates and recognizes that, under the unique facts of this case and Claimant Wintermute's above representations, that Claimant Wintermute's property interest in the Defendant Funds is superior to the forfeiture interest of the United States in the Defendant Funds.

18. Accordingly, the Parties hereby consent and agree to the entry of a judgment awarding all right, title and interest in the Defendant Funds to Claimant Wintermute.

19. Upon the Court's entry of Judgment, the United States shall return the Defendant Funds to Claimant Wintermute via a transfer of Defendant Funds to an address to be identified by Claimant Wintermute. That transfer shall be made via the FBI's Virtual Currency Response Team (VCRT).

20. Claimant Wintermute acknowledges that the Debt Collection Improvement Act of 1996, as codified at 31 U.S.C. § 3716 and administered through the Treasury Offset Program ("TOP"), requires the United States Treasury to offset federal payments to collect certain delinquent debts owed by a payee to the United States, a United States agency, or a state. Accordingly, Claimant Wintermute acknowledges that the amount to be returned to Claimant Wintermute under this settlement agreement may be reduced by the amount of any such delinquent debt that the United States Treasury is required to collect through TOP.

21. The Parties consent and agree that each party shall bear its own costs, attorney's fees, and expenses. Claimant Wintermute expressly agrees that it shall not be deemed a prevailing party in this action for purposes of costs, attorney's fees, or expenses.

22. Claimant Wintermute hereby waives, effective upon its receipt of the full amount of the payment described in paragraph 18, any and all claims that it has or might have against the United States of America, the United States Department of Justice, the United States Marshals Service, the FBI, the IRS, and all agents, officers, employees, and contractors thereof (the "Released Parties"), relating to the seizure or forfeiture of the Defendant Funds, including any claims for lost profits or interest. It is the intent of the parties that the waiver in this paragraph shall be self-executing and that no act, beyond Claimant Wintermute's receipt of the full amount of the payment described in paragraph 18, shall be required for the referenced waiver to take effect.

23. Claimant Wintermute agrees to hold the Released Parties harmless from any and all future claims of third parties pertaining to the Defendant Funds.

24. If any person or entity other than Claimant Wintermute makes a claim to the Defendant Funds, and such claim necessitates any further forfeiture proceedings regarding the Defendant Funds, Claimant Wintermute agrees to cooperate fully with the United States in any such further forfeiture proceedings.

25. The Parties consent and agree that the United States had reasonable cause for the seizure and arrest of the Defendant Funds and for the commencement and the prosecution of this forfeiture action against the Defendant Funds and, accordingly, that the Court should enter a Certificate of Reasonable Cause under 28 U.S.C. § 2465.

26. This stipulation contains the entire agreement between Claimant Wintermute and the United States of America.

27. Pursuant to Local Civil Rule 7(m), the government conferred with counsel for Wintermute, which consents to the entry of this Stipulation.

28. The Court shall retain jurisdiction in this cause for the purpose of enforcing the terms of this stipulation for compromised settlement.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar Number 481052

By: */s/ Christopher Brown*
Christopher B. Brown, D.C. Bar Number 1008763
Assistant United States Attorney
United States Attorney's Office
601 D Street, N.W.
Telephone: 202-252-7153
Christopher.Brown6@usdoj.gov

So stipulated:

*/s/ David B. Smith, Esq.* December 22, 2023

David B. Smith, Esq. Date
Attorneys for Claimant
Wintermute Trading Ltd.

*/s/Marina Gurevich* December 22, 2023

MARINA GUREVICH Date
Chief Operating Officer
Wintermute Trading Ltd.