**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>APPROXIMATELY 3,972,017 PAXOS STANDARD TOKENS SEIZED FROM PAXOS TRUST COMPANY<br><br>Defendant. | ) | Civil Action No. 23-339 (BAH)<br><br>Judge Beryl A. Howell |

**ORDER**

Upon consideration of both (1) the Plaintiff United States' Stipulated Motion for Entry of Judgment Awarding all Right, Title, and Interest in the Defendant Funds to Sole Claimant Wintermute Trading Company Limited ("Wintermute") and (2) the Stipulation for Compromise Settlement between the United States and Wintermute, the Court finds:

1. On or about November 17, 2022, pursuant to the Court's Seizure Order of October 25, 2022, a duly authorized agent of the Federal Bureau of Investigation ("FBI") seized and arrested the Defendant Funds, described as:

> **Approximately 3,972,017 PAX tokens seized from Paxos Trust Company**.

2. On February 7, 2023, the United States filed a verified complaint in this civil forfeiture action against the Defendant Funds (the "Complaint"). The Complaint alleges that the Defendant Funds:

   a. Were transferred by Paxos Trust Company ("Paxos") to law enforcement custody on November 17, 2022;

b. Constitute or were derived from proceeds traceable to violations of Title 18, United States Code, Sections 1343 (wire fraud) and 1029 (access device fraud); and

c. Are therefore subject to civil forfeiture under Title 18, United States Code, § 981(a)(1)(C).

3. On or about March 2, 2023, the United States caused the Complaint and the Notice of Judicial Forfeiture Proceedings to be served on Wintermute, via electronic mail. ECF No. 10.

4. On or about March 31, 2023, Wintermute filed a timely and valid Verified Claim to the Defendant Funds Seized for Forfeiture. ECF No. 6.

5. Beginning on March 3, 2023, and continuing through April 1, 2023, the United States posted notice of this civil forfeiture action on an official government internet website, on www.forfeiture.gov, for at least 30 consecutive days, as required by Rule 4(G)(a)(iv)(C) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. *See* Service, ECF No. 9.

6. As of May 2, 2023, the sole claimant in this action was Wintermute. By that date, the time for any other potential claimant to file a claim had expired and no other person or entity had filed a claim to the Defendant Funds.

7. Accordingly on July 6, 2023, the United States filed a Declaration of and Request for Clerk's Entry of Default as to All Potential Claimants Except Wintermute Trading Ltd.

8. On July 11, 2023, the Clerk entered default as to all potential claimants other than Wintermute. ECF Nos. 10, 11.

9. On August 25, 2023, the United States filed its Notice of Motion and Motion for Judgment by Default as to All Potential Claimants Except Wintermute Trading Ltd. The United

States brought that motion for the purpose of forfeiting to the United States the potential interests of all persons and entities in the world in the Defendant Funds, other than Claimant Wintermute's interest in the Defendant Funds, so that the United States could then enter into an agreement with Wintermute—(a) recognizing Claimant Wintermute's superior interest in the Defendant Funds, and (b) stipulating to entry of a Judgment declaring that all right, title and interest in the Defendant Funds belongs to Claimant Wintermute—without fear that some other claimant might one day also assert a belated claim to the Defendant Funds.

10. On November 22, 2023, this Court entered a "default judgment forfeiting the interests of all potential claimants in the world, other than Claimant Wintermute Trading Limited, as to the Defendant Funds pursuant to Fed. R. Civ. P. 55." The Court further ordered that "[t]his Case shall remain pending, however, to resolve the respective interests of the United States and Wintermute in the Defendant Funds." ECF No. 17.

11. Now that the potential claims of everyone in the world as to the Defendant Funds—other than those of the Plaintiff United States and sole claimant Wintermute—have been adjudicated and forfeited to the United States by default, the Plaintiff United States and Claimant Wintermute (collectively, the "Parties"), have agreed to settle and compromise this civil forfeiture action on the terms set forth in a Stipulation for Compromise Settlement.

12. As a part of the Stipulation for Compromise Settlement, the Parties have stipulated to the following facts, *see* ECF No. 18-1:

a. On or about September 20, 2022, an unknown individual or individuals ("hackers") initiated an online exploit that allowed them to gain unauthorized access to a Wintermute virtual currency wallet.

b. On or about September 20, 2022, after initiating that online exploit, the hackers stole over $160 million worth of digital assets from that Wintermute wallet.

c. Wintermute is a UK-based proprietary trading firm that specializes in algorithmic trading of digital assets.

d. Historically, Wintermute used Profanity, an Ethereum vanity address-generating tool to generate some of its legacy addresses. While most Ethereum wallet addresses are generated randomly (*i.e.*, a user is assigned a random alphanumeric string), Profanity enables its users to create vanity addresses containing a chosen name, word, or phrase somewhere within the address. Vanity addresses are created by calculating many different public/private keypairs and identifying one that meets the criteria set forth by the user. In other words, instead of getting a string of random letters and numbers as a user's virtual currency wallet address, Profanity allows users to choose their own address, containing a user-specified string of letters and numbers.

e. According to Wintermute, in early 2022, after learning of a vulnerability in Profanity's automatic address-generating tool that could allow attackers to recover private keys from any vanity address generated using Profanity, Wintermute stopped using Profanity to generate any new addresses and established other security measures to prevent unauthorized access to its wallets.

f. According to Wintermute, in early September 2022, following internal investigations and third party reports, Wintermute took measures to review its wallets and to retire ones generated by Profanity and to blacklist such

Profanity-generated wallets. However, Wintermute's blacklisting of one of several wallets failed.

g. On September 20, 2022, hackers conducted an elaborate multi-step exploit using compromised Profanity-generated wallets to gain unauthorized access to a Wintermute wallet and to transfer approximately $160 million worth of digital assets via access through a Profanity-generated wallet. Hackers accessed Wintermute's wallet, without Wintermute's authorization, by executing the above-described Profanity exploit to gain access to smart contract functionality to extract funds away.

h. The hackers then initiated transactions to transfer approximately $160 million worth of funds, including the Defendant Funds, out of that Wintermute wallet. The hackers conducted this exploit and transferred those Wintermute funds, including the Defendant Funds, without Wintermute's authorization and under the false and fraudulent pretense that the hackers were the legitimate owners of the Wintermute funds.

i. The hackers sent the Defendant Funds from Wintermute's wallet to an unhosted virtual currency address outside Wintermute's control. Law enforcement continues to work to identify the owner/controller of that virtual currency address.

j. In conducting these transactions, the unknown hackers caused to be transmitted by means of wire communication in interstate or foreign commerce writings, signs, and signals in the form of transaction announcements broadcast across the networks for each of the stolen cryptocurrencies, including BTC, ETH, and PAX.

k. Of the $160 million, hackers stole approximately: $120 million worth of the stablecoins USDC and Tether (or USDT), $20 million worth of BTC and ETH, and $20 million in other coins, including the Defendant Funds consisting of approximately 3,972,017 PAX tokens.

l. Paxos is a U.S.-based virtual currency exchange that acts as the token manager and treasury for PAX tokens. In this context, acting as the token manager and treasury for PAX means that Paxos controls (1) the smart contract that creates PAX tokens and (2) the reserve assets held to back each minted PAX token available on the market. Paxos's role as token manager and treasury enable Paxos to modify the smart contract for PAX to "freeze" PAX tokens contained in an unhosted wallet address, then "burn" (*i.e.*, render unusable) the PAX tokens in that crime-linked unhosted virtual currency address. Pursuant to a warrant, Paxos can reissue the same amount of PAX tokens that have been burned (i.e., mint new PAX tokens) to an address in law enforcement's control.

m. On or about September 23, 2022, using this freeze/reissuing capability, Paxos worked to freeze (via wire communications across blockchains) the Defendant Funds in the unhosted virtual currency address, pending the receipt of a seizure warrant or other appropriate legal process.

n. On or about October 25, 2022, Magistrate Judge Moxila A. Upadhyaya signed a warrant under case number 22-sz-25, authorizing the seizure of the Defendant Funds.

o. On or November 17, 2022, Paxos transferred the Defendant Funds to law enforcement custody. That transfer was initiated by Paxos in New York.

13. Under the terms of the Stipulation for Compromise Settlement, the Parties have consented and agreed, among other things, that:

a. Claimant Wintermute was and is the rightful owner of both: (1) the Defendant Funds, that is, the approximately 3,972,017 PAX tokens that hackers obtained by fraud; and (2) the address from which the hackers fraudulently transferred those funds;

b. Claimant Wintermute warrants and represents that it is the sole owner of the Defendant Funds and that address that no other person or entity has an interest in the Defendant Funds or that address;

c. Under the unique facts of this case and Claimant Wintermute's above representations, Claimant Wintermute's property interest in the Defendant Funds is superior to the forfeiture interest of the United States in the Defendant Funds;

d. The Court should therefore enter judgment awarding all right, title, and interest in the Defendant Funds to Claimant Wintermute;

e. Upon the Court's entry of Judgment, the United States shall return the Defendant Funds to Claimant Wintermute via a transfer of Defendant Funds to an address to be identified by Claimant Wintermute. That transfer shall be made via the FBI's Virtual Currency Response Team (VCRT); and

f. Each party shall bear its own costs, attorney's fees, and expenses, and Claimant Wintermute shall not be deemed a prevailing party in this action for purposes of costs, attorney's fees, or expenses.

14. Finally, the United States has moved, under Rule 58 of the Federal Rules of Civil Procedure, for entry of judgment awarding all right, title, and interest in the Defendant Funds, namely, approximately 3,972,017 Paxos Standard Tokens Seized from Paxos Trust Company, to Claimant Wintermute Trading Limited.

Based on the above findings, the parties' stipulations, and the files and records of the Court, it is hereby **ORDERED AND ADJUDGED:**

1. The Court ADOPTS the Parties' Stipulation for Compromise Settlement as its findings of fact.

2. The Court GRANTS the Plaintiff United States' Stipulated Motion for Entry of Judgment Awarding all Right, Title, and Interest in the Defendant Funds to Sole Claimant Wintermute Trading Company Limited.

3. The Court ORDERS that the Clerk of Court enter Judgment of Forfeiture awarding all right, title, and interest in the Defendant Funds, Approximately 3,972,017 PAX tokens seized from Paxos Trust Company, to Claimant Wintermute Trading Company Limited.

4. Upon the Court's entry of Judgment, the United States shall return the Defendant Funds to Claimant Wintermute via a transfer of Defendant Funds to an address to be identified by Claimant Wintermute.

5. Each party shall bear its own costs, attorney's fees, and expenses.

6. Based upon the allegations set forth in the Complaint and the Parties' Stipulation for Compromise Settlement, the Court hereby ENTERS this Certificate of Reasonable Cause under 28 U.S.C. § 2465, and FINDS that the United States had reasonable cause for the seizure and arrest of the Defendant Funds and for the commencement and the prosecution of this forfeiture action against the Defendant Funds.

7. This Court shall retain jurisdiction in this cause for the purpose of enforcing the terms of this Order.

**SO ORDERED.**

DATED: January 2, 2024

BERYL A. HOWELL
United States District Judge